Frank E. DARROW, Appellant,

v.

Clary SPENCER, d/b/a Spencer Valley Ranch, Appellee.

No. 50170.

Supreme Court of Oklahoma.

July 18, 1978.

Francis M. Pickel, Jr., Oklahoma City, for appellant.

James A. Loomer, Oklahoma City, for appellee.

DAVISON, Justice.

In the Spring of 1975, Dr. Frank E. Darrow and Clary Spencer entered into an oral contract for the sale of hay. Under the terms of the oral contract, upon which both parties agree, Dr. Darrow was to sell Mr. Spencer bales of hay at a $1.50 a bale, each bale to be a "good bale of hay". It was Mr. Spencer's understanding that under the terms of the contract, Dr. Darrow had agreed to sell him all the hay grown by the Doctor on his farm during the 1975 season. The Doctor admits the parties discussed the possibility of his selling all the hay grown during the 1975 season, but it was his

understanding that such a term was never made final.

As the season progressed, the first two cuttings of the hay were baled, and Mr. Spencer took delivery of those cuttings. However, Dr. Darrow refused to sell him any more hay at the $1.50 price. Thereupon, a dispute arose as to whether under the terms of the oral contract, Dr. Darrow had committed himself to sell all the hay grown on his farm during the 1975 season. A dispute also arose over whether much of the hay from the first cutting was moldy, and whether the bales from the second cutting were light in weight.

Eventually, Mr. Spencer sued Dr. Darrow for breach of contract. In that suit, Mr. Spencer sought the following damages: (1) $5,680.75 for damages due to the alleged moldy nature of the first cutting of hay; (2) $750.00 damages due to the alleged nonconforming light bales in the second cutting; and (3) $6,225.00, the alleged additional amount Mr. Spencer was forced to pay for hay which he would have received from Dr. Darrow, but which he was obliged to purchase elsewhere at a higher price, allegedly due to the Doctor's breach. Mr. Spencer also sought a reasonable attorney fee.

Dr. Darrow answered by admitting that he had entered into a verbal agreement with the plaintiff to sell certain hay from his farm, but denied the allegations that the terms of the contract required him to sell all hay grown on his farm in 1975. Dr. Darrow also specifically denied that any hay sold to the plaintiff was moldy or that any minimum weight agreement had been breached. Additionally, Dr. Darrow filed a cross-petition seeking $1,303.95, alleged to be owed by Mr. Spencer for hay he had already received.

At trial, the trial judge, sitting as both trier of fact and law, by agreement of the parties, entered a judgment finding that the parties had in fact entered into a contract for the sale of all hay grown on Dr. Darrow's land during the 1975 growing season, and that the contract had been breached by Dr. Darrow. The trial court then entered a money judgment in favor of Mr. Spencer and against Dr. Darrow in the amount of $3,500.00 (representing 4,600 bales which Mr. Spencer would have received had the contract been carried out, times $.75 each, the additional cost of bales purchased by Mr. Spencer). The trial court also granted Mr. Spencer judgment in the amount of $100.00 for damage due to light weight bales, and also awarded Mr. Spencer attorney fees in the amount of $500.00. The court did not however award any damages based upon the alleged moldy hay, and the trial court's failure to do so is not before us.

Dr. Darrow has appealed from the judgment in the trial court arguing that, among other things, that the Statute of Frauds' provisions of the Uniform Commercial Code, set forth at 12A O.S.1971 § 2–201, prohibits the enforcement of the oral contract upon which the suit was based. Title 12A O.S. § 2–201 provides:

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of Five Hundred Dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between the parties if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.

(3) *A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable.*

(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(b) *if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or*

(c) *with respect to goods for which payment has been made and accepted or which have been received and accepted.*" [Emphasis added]

Mr. Spencer argues that enforcement of the sales contract before the Court was not barred by the Statute of Frauds, as partial performance and Dr. Darrow's admission that there was a contract, takes the contract out of the purview of the Statute and therefore makes the contract enforceable.

▮ Although it is true that Dr. Darrow admitted in his pleadings and in his testimony that there was a sales contract, he denied, both in his pleadings and in his testimony that the contract involved the sale of *all hay* raised on his farm in the 1975 season. He only admits that the contract was for the sale of the first two cuttings of hay. Likewise, the performance only involved the delivery of the first two cuttings of hay, and the receipt of payment for those two cuttings only. Accordingly, under the provisions of 12A O.S. § 2–201(3), quoted above, the contract was only enforceable as to the quantity of goods admitted to, and

enforceable as to goods for which payment had been made and accepted or which had been received and accepted. None of the admissions or actions on the part of either party had the effect of making the alleged executory provisions of the contract—the sale of future cuttings at a $1.50 a bale—enforceable under the Statute of Frauds.

An additional issue raised is whether under the doctrine of promissory estoppel, Dr. Darrow is estopped from asserting the Statute of Frauds as a defense. Mr. Spencer, in asserting that Dr. Darrow was estopped from raising the defense of the Statute of Frauds, calls this Court's attention to the case of *Lacy v. Wozencraft*, 188 Okl. 19, 105 P.2d 781 (1940). In that case, in discussing the doctrine of promissory estoppel, we stated:

"So-called promissory estoppel is recognized in many jurisdictions. See 19 Amer.Jur. 657. It is based upon the same equitable principles as is estoppel by silence. In the one case a promise is made with the intention that it be acted upon by the promise; in the other, a person has been silent on some occasion when he should have spoken. But in either case the party who is estopped has in effect stood by and, in violation of his duty in equity and good conscience to warn another of the real facts, permitted the latter to take some action detrimental to his own interest.

In order for *estoppel* to arise in such case, it is not necessary that the one estopped receive some benefit or consideration from the particular transaction; neither is it necessary that he be guilty of some actual overt act of fraud. It is true that there must be some false representation or concealment of facts, and there must be an intention that some action be taken thereon, but the representation or concealment may arise from the silence of the party when he is under [an] imperative duty to speak, and the intention aforesaid may be inferred from the circumstances." [Emphasis added]

In the case before us, we hold that the employment of the doctrine of promissory estoppel would be inappropriate, as under the facts presented, Dr. Darrow reasonably believed that no firm agreement had been reached concerning the sale of all his hay. In so holding, we note that the trial judge stated that he thought Dr. Darrow was not sure that the parties had reached an agreement. This being the case, we cannot say that Dr. Darrow should be estopped from raising the defense of the Statute of Frauds. Accordingly, we refuse to apply the doctrine of promissory estoppel, and therefore conclude that the contract before us, save for the portions already performed, was not enforceable under the Statute of Frauds as set forth at 12A O.S.1971 § 2–201.

Accordingly, we hold that the trial court committed reversible error in:

1. Ruling that the Statute of Frauds did not preclude the enforcement of the alleged executory provisions of the contract, and

2. Awarding $3,500.00 to Mr. Spencer as damages alleged to have been sustained as a result of Mr. Spencer being forced to go out on the market and purchase hay at a higher price than the contract price.

Appellant also asserts on appeal that the trial court erred in awarding damages arising out of the non-conforming nature of the light hay delivered by Dr. Darrow. In so arguing, appellant correctly points out that a seller must be given notice of any revocation of acceptance or rejection of the goods, within a reasonable time. See 12A O.S. §§ 2–607 and 2–608. Appellant argues that such notice within a reasonable time was not given. The record does not demonstrate with any certainty when the non-conforming nature of the light hay was discovered, as the testimony was somewhat confusing. We cannot say, in any event, that the trial court's finding of fact, that notice was given within a reasonable time, was not supported by evidence tending to support that conclusion. Accordingly, we affirm the trial court's awarding of $100.00 damages to compensate Mr. Spencer for the non-conforming nature of the light hay. In conjunction with this issue, appellant asserts that the trial court erred in not granting judgment to Dr. Darrow on his cross-petition in the amount of $345.00, representing the price of 230 bales of hay received by Mr. Spencer, but never paid for. The record indicates that no payment was made for the 230 bales, as Mr. Spencer deducted the cost of those bales from his payment for the second cutting to compensate for the bales being light. As the record is silent on the matter, we must assume that the trial court took this deduction into account when assessing the damage for the light hay and rendering judgment for $100.00. Accordingly, we find no merit to appellant's argument. Because appellant did not request specific findings of fact to be made at the trial stage, he cannot now rely on his speculation as to how the trial court arrived at the $100.00 damage figure. We thus assume that in arriving at that figure, the trial court considered the deduction already made by Mr. Spencer to compensate him for the non-conforming light hay.

Lastly, we consider whether the trial court erred in awarding attorney fees to Mr. Spencer. No one disputes that the action before us is one for breach of a contract for the sale of goods or merchandise. Under the provisions of 12 O.S.1971 § 936, the prevailing party in an action to recover on a contract relating to the purchase or sale of goods, wares or merchandise, shall be awarded a reasonable attorney fee to be taxed and collected as costs. The trial court, in the case before us, had statutory authority to award a reasonable attorney fee. However, we have no way of discerning whether the attorney fee awarded below was a reasonable one, as there was no evidence in the record showing what attorney services were performed, nor was there evidence showing the value of any services performed. Because of this, we are

unable to determine whether the fee awarded was a reasonable one. This being the case, we remand the case to the trial court for reconsideration of attorney fees. In reconsidering the attorney fees, the trial court is to determine what attorney services were performed, which services were necessary, and the value of the necessary services, and what a reasonable fee for such services, if any, should be.

For the above stated reasons, we affirm the judgment of the trial court insofar as it awarded $100.00 in damages to appellee Spencer and reverse the trial court's judgment insofar as it awarded $3,500.00 to compensate appellee for damages allegedly sustained when the executory portion of the contract dealing with future cuttings was allegedly breached. We also reverse the trial court's awarding of attorney fees, as the record did not contain sufficient evidence upon which the trial court could determine what a reasonable fee, if any, should be. In reversing the trial court's award of attorney fees, we remand the case to the trial court for reconsideration of attorney fees with instructions.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

All the Justices concur.