Thomas P. GIBSON, Plaintiff–
Appellant,

v.

L.D. "Poke" ARNOLD, Deborah A.
Arnold, Defendants–Appellees.

No. 01–6213.

United States Court of Appeals,
Tenth Circuit.

May 1, 2002.

David M. Collins and Julia C. Rieman of Gungoll, Jackson, Collins, Box & Devoll, P.C., Enid, OK, for the Plaintiff–Appellant.

Robert B. Smith and Bruce MacDougall of the Law Offices of Robert B. Smith, Oklahoma City, OK, for the Defendants–Appellees.

Before KELLY, BRISCOE, and LUCERO, Circuit Judges.

LUCERO, Circuit Judge.

The question presented by this appeal is whether the Oklahoma Statute of Frauds, Okla. Stat. Ann. tit. 15, § 136, precludes enforcement of an in-court oral settlement agreement involving the transfer of real property, the terms of the settlement agreement having been agreed to at a settlement conference before a magistrate judge. Plaintiff Thomas P. Gibson appeals the district court's judgment rejecting his breach of contract claim against defendant L.D. "Poke" Arnold. Under the circumstances of this case, we conclude that the parties' oral agreement is enforceable. Consequently, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.[1]

## I

In November 1998, Gibson filed a complaint against Arnold in the Western District of Oklahoma, case No. 98–CV–1617–M ("conversion case"). In his complaint, Gibson alleged that Arnold had converted several thousand head of cattle which Gibson owned, and he sought to recover damages from Arnold in excess of two million dollars. A settlement conference was held in the conversion case on June 18, 1999. At the settlement conference, Gibson and Arnold informed the magistrate judge that they had agreed to settle all of Arnold's claims, and the terms of the settlement were agreed to before the magistrate judge. Although the terms of the settlement were not entered on the record, it is undisputed that Arnold and Gibson agreed to settle the conversion case on the following terms:

1. Arnold agreed to confess to a judgment in favor of Gibson in the amount of $400,000.00, and he further agreed that the judgment would be non-dischargeable in bankruptcy;

2. Arnold agreed to convey 640 acres of certain specified land to Gibson, subject to one-half of the mortgage that existed on the property in favor of The Baptist Foundation of Oklahoma (Foundation), with Gibson agreeing to pay off one-half of the balance of the mortgage;

3. Gibson agreed to lease the 640 acres back to Arnold for a period of ten years, and Arnold agreed to pay Gibson $5,000.00 per year for the first three years and $9,000.00 per year for the last seven years;

4. Arnold agreed to make the following cash payments to Gibson: (1) $500.00 per month for ten years; (2) $5,000.00 per year for ten years; and (3) a final payment of $100,000.00 at the end of the tenth year; and

5. Gibson agreed to release the judgment which Arnold confessed to upon full performance of the above terms by Arnold.

Gibson and Arnold also agreed to execute a written settlement agreement, and it was agreed that Gibson's counsel would prepare the settlement agreement and any other necessary documentation. Gibson's counsel subsequently prepared a written settlement agreement, a journal entry of judgment, a lease agreement, and a warranty deed, and he forwarded the settle-

---

1. Arnold's wife, Deborah A. Arnold, is also a named defendant in this case. We do not need to address separately the claims against Deborah Arnold to resolve the issues presented by this appeal.

ment documentation to Arnold's counsel for his approval.

In the meantime, on June 25, 1999, the district court entered an administrative closing order in which it stated that the parties had represented to the court that they had reached a settlement; and that the case was administratively terminated and would be deemed dismissed with prejudice unless reopened within thirty days. Neither party moved to reopen the case within the thirty-day period, and the conversion case was deemed dismissed with prejudice on July 25, 1999.

Despite the entry of the administrative closing order, the parties continued to finalize the settlement documentation, and several drafts and other correspondence were exchanged between June 1999 and February 2000. Although it is undisputed that the settlement documents prepared by Gibson's counsel were in accordance with the oral agreement reached by the parties at the settlement conference, Arnold refused to execute the settlement documents. As a result, on March 15, 2000, Gibson filed a motion in the conversion case to enforce the settlement agreement. In response to the motion, Arnold argued, apparently for the first time, that the settlement agreement was unenforceable because the conversion case had been dismissed with prejudice in July 1999 pursuant to the administrative closing order. On May 2, 2000, the district court denied Gibson's motion, concluding that it lacked jurisdiction to enforce the settlement agreement because the case had been dismissed.

After the district court denied his motion to enforce the settlement agreement, Gibson took no further action in the conversion case. Instead, he filed the instant case in the same court as a separate action for breach of contract to specifically enforce the parties' oral settlement agreement and/or recover compensatory dam-

ages. Arnold filed a motion for summary judgment on the breach of contract claim, arguing that the oral settlement agreement was invalid under Oklahoma's statute of frauds, *see* Okla. Stat. Ann. tit. 15, § 136(1), (5), because it involved a transfer of real property, a lease of real property for more than a year, and monetary payments that were not to be performed within a year. The district court denied Arnold's motion, concluding that, although the oral settlement agreement was invalid under the statute of frauds, there were genuine issues of material fact for trial as to whether Arnold was estopped from relying on the statute.

Subsequently, the district court conducted a bench trial on the estoppel issues. At the trial, Arnold admitted in his sworn testimony that he had agreed at the settlement conference in the conversion case to settle the case in accordance with the terms set forth above. (*See* Appellant's App. at 350–52, 363–65, 372–73.) He also admitted that the parties had confirmed the terms of the settlement agreement before the magistrate judge (*see id.* at 379–80) and that the case did not go to trial "[b]ecause we reached a settlement agreement" (*id.* at 373). Despite these unequivocal admissions, the district court concluded that Arnold was not estopped under Oklahoma law from raising the statute of frauds, and the court therefore determined that the oral settlement agreement was invalid. The district court entered judgment in favor of Arnold, and this appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

 We review the district court's rulings with respect to Oklahoma's statute of frauds de novo. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1224 (10th Cir.2000), *aff'd*, 532 U.S. 588, 121 S.Ct. 1776, 149 L.Ed.2d 845

(2001). Having conducted a de novo review, we agree with the district court that the oral settlement agreement is subject to Oklahoma's statute of frauds and that Gibson has failed to establish a sufficient basis under Oklahoma law to estop Arnold from relying on the statute. Gibson is not without a remedy, however, because we hold that the oral settlement agreement is enforceable under the judicial admission exception to the statute of frauds.[2]

## A. Equitable and Promissory Estoppel

■ Under Oklahoma law, a defendant must make false representations or conceal facts before he will be estopped from asserting the statute of frauds as a defense to an oral agreement, and the Oklahoma Supreme Court has interchangeably referred to this form of estoppel as both equitable and promissory estoppel. *See Lacy v. Wozencraft*, 188 Okla. 19, 105 P.2d 781, 783 (Okla.1940); *see also Sellers v. Sellers*, 428 P.2d 230, 240 (Okla. 1967) (referring to "equitable" estoppel); *Darrow v. Spencer*, 581 P.2d 1309, 1312 (Okla.1978) (referring to "promissory" estoppel). As stated by the district court, the only fraud alleged here is Arnold's failure to abide by the parties' oral agreement, and this is an insufficient basis for

an estoppel under Oklahoma law. *See Sellers*, 428 P.2d at 240 (noting that the fraud necessary to estop a defendant from relying on the statute of frauds "is not the mere moral fraud involved in the repudiation of a contract actually entered into").

■ Even if Gibson is only required to prove the elements of promissory estoppel under the Restatement (Second) of Contracts § 90,[3] we agree with the district court that Gibson has failed to establish sufficient detrimental reliance to support promissory estoppel under the Restatement. As the district court found, the ultimate detriment suffered by Gibson was the dismissal of the conversion case, and Gibson's reliance on the parties' oral settlement agreement or, more specifically, Arnold's oral promise to execute a written settlement agreement, was not the actual cause of the dismissal of the conversion case. Instead, the conversion case was dismissed because of Gibson's unilateral failure to reopen the case after the district court entered the administrative closing order.

## B. Judicial Admission Exception

■ The Oklahoma Supreme Court has never specifically addressed the issue of

---

**2.** Gibson has not invoked the judicial admission exception by name. However, he has clearly argued its substance, insisting that Oklahoma's statute of frauds should not bar the enforcement of the parties' settlement agreement because Arnold has unequivocally admitted under oath that he agreed to the terms of the agreement. Gibson has also cited *Brockman v. Sweetwater County School District No. 1*, 826 F.Supp. 1328 (D.Wyo. 1993), *aff'd*, 25 F.3d 1055 (10th Cir.1994) (table), in both his opening and reply briefs. *Brockman* involved a motion to enforce an oral settlement agreement, and the court separately addressed the statute of frauds and held that the settlement agreement was not within the statute of frauds after discussing at length the fact that the terms of the settlement were agreed to at a settlement conference

conducted before a magistrate judge. *See id.* at 1332–33. Gibson's arguments and citations to *Brockman* are sufficient to present the issue of whether the judicial admission exception should apply in this case.

**3.** Cf. *Russell v. Bd. of County Comm'rs*, 952 P.2d 492, 503 (Okla.1997) (holding, in non-statute of frauds context, that doctrine of promissory estoppel, as set forth in § 90 of the Restatement, has been incorporated into Oklahoma's common law, and that the elements of promissory estoppel are: "(1) a clear and unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3) reasonable reliance upon the promise to the promisee's detriment and (4) hardship or unfairness can be avoided only by the promise's enforcement").

whether judicial admissions are an exception to Oklahoma's statute of frauds. Consequently, we must predict how the Supreme Court of Oklahoma would rule. *FDIC v. Schuchmann,* 235 F.3d 1217, 1225 (10th Cir.2000). In doing so, "we are free to consider all resources available, including decisions of [Oklahoma] courts, other state courts and federal courts, in addition to the general weight and trend of authority." *Id.*

In *Purcell v. Corder,* 33 Okla. 68, 124 P. 457 (Okla.1912), the Oklahoma Supreme Court quoted with approval language from a decision of the New Jersey Chancery Court that "[a] defendant may answer and admit the parol agreement; but, if at the same time he insists on the protection of the statute [of frauds], no decree can be made against him merely on the ground of the admission of the agreement." *Id.* at 460 (quoting *In Van Dyne v. Vreeland,* 11 N.J.Eq. 370 (N.J.Ch.1857)). We do not find *Purcell* dispositive for purposes of this case. First, *Purcell* only involved an admission by way of a demurrer (i.e., a motion to dismiss); whereas, in this case, Arnold has expressly admitted in court, both in his sworn testimony in this case and at the settlement conference before the magistrate judge in the conversion case, that he agreed to the settlement agreement and all of its material terms. Second, *Purcell* was decided almost ninety years ago, and neither the Oklahoma Supreme Court nor any other court has ever cited the case for the proposition that Oklahoma does not recognize the judicial admission exception to the statute of frauds.[4]

*Purcell* is also at odds with the growing weight of authority in this country because virtually every court that has addressed the issue during the last twenty-five years has held that judicial admissions are an exception to the statute of frauds. *See, e.g., Flight Sys., Inc. v. Elec. Data Sys. Corp.,* 112 F.3d 124, 127–28 (3d Cir.1997) (applying Pennsylvania law and holding that Pennsylvania's statute of frauds does not bar an oral agreement if the party against whom the agreement is sought to be enforced admits to the existence of the contract in pleadings or testimony); *Consolidation Servs., Inc. v. KeyBank Nat'l Ass'n,* 185 F.3d 817, 820 (7th Cir.1999) (same, applying Indiana law); *Stoetzel v. Cont'l Textile Corp. of Am.,* 768 F.2d 217, 222 (8th Cir.1985) (same, applying Missouri law); *Anchorage–Hynning & Co. v. Moringiello,* 697 F.2d 356, 361–62 (D.C.Cir.1983) (same, applying District of Columbia law); *Paris Util. Dist. v. A.C. Lawrence Leather Co.,* 665 F.Supp. 944, 956–57 (D.Me.1987) (same, applying Maine law); *Timberlake v. Heflin,* 180 W.Va. 644, 379 S.E.2d 149, 152–53 (W.Va.1989) (same, applying West Virginia law); *Litzenberg v. Litzenberg,* 307 Md. 408, 514 A.2d 476, 480 (Md.1986) (same, applying Maryland law); *Bentley v. Potter,* 694 P.2d 617, 621 (Utah 1984) (same, applying Utah law); *Adams–Riker, Inc. v. Nightingale,* 119 R.I. 862, 383 A.2d 1042, 1044–45 (R.I.1978) (same, applying Rhode Island law); *Herrera v. Herrera,* 126 N.M. 705, 974 P.2d 675, 679–80 (N.M.Ct.App.1999) (same, applying New Mexico law); *Davis v. Roberts,* 563 N.W.2d 16, 21 (Iowa Ct.App.1997) (same, applying Iowa law); *Wolf v. Crosby,* 377 A.2d 22, 26–27 (Del.Ch.1977) (same, applying Delaware law). *But see Key Design Inc. v. Moser,* 138 Wash.2d 875, 983 P.2d 653, 659–61 (Wash.1999) (declining to adopt judicial admission exception as an

---

4. In fact, the primary holding of the case was that a promisee's performance of certain services pursuant to an oral contract to deed or bequeath real property will take the contract out of the statute of frauds, and this is the proposition that the case has most recently been cited for by the Oklahoma Supreme Court. *See State ex rel. Derryberry v. St. Elijah's Antiochian Orthodox Christian Church,* 551 P.2d 264, 268 (Okla.1976).

exception to the requirement under Washington's statute of frauds that contracts for the sale of real property contain a legal description of the property); *Durham v. Harbin,* 530 So.2d 208, 212 n. 5 (Ala.1988) (recognizing strong arguments favoring judicial admission exception, but declining to depart from prior case law rejecting exception where the oral contract sued upon was not sufficiently admitted to by defendant).

 Assuredly, the rationale for the judicial admission exception is "that the purpose of the statute of frauds is to shield persons with interests [covered by the statute] from being deprived of those interests by perjury, not to arm contracting parties with a sword they may use to escape bargains they rue." *Flight Sys.,* 112 F.3d at 128 (citations omitted). "If the defendant admits under oath that a contract was formed, the purposes of the statute of frauds are served, and the contract will be afforded full legal effect." *Id.* (citations omitted).

*Brown v. Founders Bank & Trust Co.,* 890 P.2d 855, 863 (Okla.1994), implicitly recognizes the underlying rationale for the judicial admission exception, stating that "Statutes of frauds are enacted to prevent frauds not to perpetrate them. Such statutes are not intended to be used as shield or breastwork for a wrongdoer." Moreover, in 1961, the Oklahoma legislature enacted Oklahoma's version of Article 2 of the Uniform Commercial Code (UCC), and the legislature adopted a judicial admission exception to the statute of frauds in Article 2. *See* Okla. Stat. Ann. tit. 12A, § 2–201(3)(b); *see also Darrow,* 581 P.2d at 1311–12 (applying statutory judicial admission exception to remove part of an oral contract for the sale of goods from the UCC's statute of frauds). Although this statutory exception does not apply here,

"[t]his sensible provision represents legislative recognition of a policy common to the statute of frauds." *Herrera,* 974 P.2d at 679 (quotation and citation omitted).

 Although we are not prepared to predict that the Oklahoma Supreme Court would adopt the judicial admission exception for all oral contracts covered by Oklahoma's statute of frauds, we predict that the Court would adopt at least a limited variation of the exception if it had to decide this case given that: (1) Arnold unequivocally admitted under oath at the trial in this case that he agreed to all of the material terms of the settlement agreement; (2) Arnold admitted and expressly agreed to the terms of the settlement agreement at a court-ordered settlement conference before a United States magistrate judge; and (3) the net result of the district court's ruling is not that the parties are returned to the pre-agreement status quo, but instead Arnold would receive a judicial windfall with no liability despite his express admission that "he wilfully injured the property of Mr. Gibson to the extent of value loss to Mr. Gibson in the sum of $400,000.00." (Appellant's App. at 58.)

Accordingly, we hold that the district court erred as a matter of law in determining that the parties' oral settlement agreement was unenforceable under Oklahoma's statute of frauds.

### III

The judgment of the district court is **REVERSED,** and this matter is **REMANDED** for further proceedings.[5]

---

**5.** In remanding this matter to the district court, we intend no comment as to whether Gibson is entitled to specific performance of the parties' oral settlement agreement and/or compensatory damages.